IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHELE WILLIAMS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-19-5 |
| MORGAN STATE UNIVERSITY, et al. | * | |
| Defendants. | * | |

*****

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Morgan State University (the "University") and DeWayne Wickham's ("Dean Wickham") Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 5). This case arises from the termination of Plaintiff Michele Williams' University employment in 2017. The Motion is fully briefed, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant the Motion.

### I. BACKGROUND[1]

The University, a State agency in Baltimore, Maryland, hired Plaintiff Michele Williams on January 2, 2014 as the Director of Broadcast Operations for its television and radio stations, including WEAA 88.9 FM ("WEAA"). (1st Am. Compl. ¶¶ 6, 10, 18–20, ECF No. 1-12). The University holds a license administered by the Federal

---

[1] Unless otherwise noted, the Court takes the following facts from Plaintiff Michele Williams' First Amended Complaint (ECF No. 1-12) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)).

Communications Commission ("FCC") for the operation of its radio frequency. (Id. ¶¶ 22–23). The University receives federal funding, including from the U.S. Department of Education ("DoE") and the Corporation for Public Broadcasting ("CPB"), which support its broadcasting operations, including WEAA. (Id. ¶¶ 21, 25–30). The University also receives funding from the State of Maryland, which has received funds under the American Recovery and Reinvestment Act (the "ARRA"). (Id. ¶¶ 39–40). The FCC license and public funding come with various legal obligations, including reporting requirements. (Id. ¶¶ 34–35). As Director of Broadcast Operations, Williams was responsible for management and oversight of the broadcast operations, including scheduling certain programming and certifying the audited financial statements the University submitted to CPB. (Id. ¶¶ 20, 45, 67).

In March 2016, WEAA hosted a public debate featuring the Democratic candidates for Mayor of Baltimore. (Id. ¶ 41). Encouraged by that party primary debate, Williams began organizing a debate for the four general election candidates to be held on November 3, 2016. (Id. ¶¶ 43–45). In emails leading up to the debate, Williams told her supervisor, Dean Wickham, and University President David Wilson ("President Wilson") that, per FCC rules, each candidate would be provided equal time during the debate, and President Wilson agreed. (Id. ¶¶ 46–49). After the debate was scheduled, Catherine Pugh, the Democratic candidate, emailed Dean Wickham to tell him she could not attend the debate but "would be interested in participating in an on-air interview at another time prior to the election." (Id. ¶ 50). Wickham forwarded Pugh's email to Williams, instructing Williams to cancel the debate because not all the candidates would be participating. (Id. ¶ 51). These

2

instructions were "contradictory to the previously described requirement that a non-attending candidate be provided an interview on-air," and Williams inferred that Dean Wickham favored Pugh and was violating FCC regulations. (Id. ¶¶ 53–58). After the debate was cancelled, and per an FCC regulation regarding "Equal opportunities," 47 C.F.R. § 73.1941, Williams scheduled air time for the Republican and Green Party candidates at their requests and offered time to Pugh to match the time the Independent candidate had already received. (Id. ¶¶ 60–62). Dean Wickham then sent Williams "threatening text messages and emails," including telling her that her actions would "not end well" for her. (Id. ¶¶ 63–64). Williams told President Wilson, University Provost Gloria Gibson ("Dr. Gibson"), the University's Vice President of Human Resources, and others that Dean Wickham had violated the Hatch Act, 5 U.S.C. § 7323 (2018), FCC Regulation 47 C.F.R. § 73.1941 (2018), and state and federal law concerning political activity by a state agency receiving federal funding. (Id. ¶ 65).

Also in late 2016, Williams "began noticing serious discrepancies with respect to WEAA's actual operating expenses and WEAA's expenses as being reported by the University" to the CPB and the State. (Id. ¶ 73). Williams knew operating expenses were approximately $750,000.00, but in 2014, 2015, and 2016, the University reported that WEAA had operating expenses of approximately $1,750,000.00 to $1,900,000.00. (Id. ¶¶ 74–75). The net effect of this reporting was an increase in funding from the State, DoE, and CPB, among other sources. (Id. ¶ 77). When asked to endorse the operating expenses the University reported, Williams told Dean Wickham and other University officials that she believed the numbers were inconsistent with those reported to the University's

3

financial team and were "intentionally inflated to pad the University's funding" in violation of federal law. (Id. ¶¶ 78–81). Williams refused to sign off on the 2016 financial statements and, in early 2017, told Dean Wickham and other University officials that she was "blowing the whistle" on the overstated operating costs, including to the CPB. (Id. ¶¶ 83–88). On May 2, 2017, the University terminated Williams' employment, effective August 8, 2019. (Id. ¶ 92).

On or about November 27, 2017, Williams filed a complaint under the Maryland Whistleblower Law, Md. Code Ann., State Pers. and Pens. ["SP&P"] § 5-309 with the State of Maryland's Office of Secretary of State ("Secretary of State"). (Defs.' Mot. Dismiss Altern. Summ J. ["Defs.' Mot."] at 3; id. Ex. 1 ["Administrative Complaint"] at 10, ECF No. 5-2).[2]

On April 26, 2018, Williams filed a Complaint in the Circuit Court for Baltimore City, Maryland. (Not. Removal ¶ 1, ECF No. 1; Not. Removal Ex. 2 ["Compl."], ECF No. 1-4). On November 30, 2018, Williams filed a First Amended Complaint. (Not. Removal Ex. 11 ["Not. Filing 1st Am. Compl."] at 2, ECF No. 1-13). The First Amended Complaint alleges: wrongful termination in violation of Maryland public policy (Count I); defamation (Count II); and retaliation in violation of the National Defense Authorization Act

---

[2] Citations to Exhibit 1 to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment are to the pagination the Court's Case Management / Electronic Case Files ("CM/ECF") system assigned. The only filing-related date on the Administrative Complaint is December 6, 2017, the date the Office of the Attorney General received a copy. (See id. at 1). But a copy of the envelope in which Williams' former counsel sent the Complaint to the Secretary of State is dated November 27, 2017. (Id. at 10). Williams does not dispute any of these dates.

("NDAA"), 41 U.S.C. § 4712, et seq. (2018), and the ARRA, Pub. L. No. 111-5, § 1553, 123 Stat. 115 (2009) (Count III).[3] (1st Am. Compl. ¶¶ 103–38). Williams brings Counts I and III against both Defendants; Count II is only against Dean Wickham. (See id. at 11, 15, 16). Williams seeks injunctive relief and monetary, including punitive, damages. (Id. at 19).

On January 2, 2019, Defendants removed the case to this Court. (ECF No. 1). On January 9, 2019, Defendants filed their Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 5). On February 11, Williams filed her Opposition. (ECF No. 11). On March 20, 2019, Defendants filed a Reply. (ECF No. 16).

## II. DISCUSSION

### A. Conversion

Defendants style their Motion as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d). See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the

---

[3] The First Amended Complaint also alleged discrimination and retaliation in violation of 42 U.S.C. § 1981 (2018), (1st Am. Compl. ¶¶ 139–52), but Williams has since withdrawn that claim, (Mem. P. & A. Supp. Pl.'s Opp'n Defs.' Mot. Dismiss Altern. Summ. J. at 25, ECF No. 11-1).

5

pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). The Court "does not have an obligation to notify parties of the obvious." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified

6

reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 953 (4th Cir. 1995)).

Here, Williams filed a 56(d) affidavit, requesting certain discovery. (Williams R. 56(d) Aff., ECF No. 11-3). The Court, therefore, will not convert the Motion to one for summary judgment.

**B.      Standard of Review**

"The purpose of a motion under Federal Rule of Civil Procedure 12(b)(6) is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing

7

Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of America, N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom. Goss v. Bank of America, NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**C.     Analysis**

   **1.     Retaliation in Violation of the ARRA and NDAA**

Defendants argue in their Reply that Eleventh Amendment or state sovereign immunity bar Williams' claims under the NDAA and ARRA. The Court generally does not consider arguments raised for the first time in a reply brief. See United States v. Freeman, No. PWG-16-197, 2016 WL 6582645, at *4 (D.Md. Nov. 7, 2016). The Court will, however, entertain Defendants' immunity argument for at least two reasons. First,

immunity is a jurisdictional question. Under Rule 12, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed.R.Civ.P. 12(h)(3) (emphasis added). Indeed, "questions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised sua sponte by the court." Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 390 (4th Cir. 2004). Second, Williams has had ample time to digest Defendants' immunity arguments and move for leave to file a sur-reply to address them. Typically, "[s]urreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." Khoury v. Meserve, 268 F.Supp.2d 600, 605 (D.Md. 2003) (citing Lewis v. Rumsfeld, 154 F.Supp.2d 56, 61 (D.D.C. 2001)). Williams, however, has not done so.

A state's immunity from suit is a "fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today." Alden v. Maine, 527 U.S. 706, 713 (1999). The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. Notwithstanding the Eleventh Amendment's explicit mention of only "Citizens of another State," the U.S. Supreme Court has construed the Eleventh Amendment as also protecting states from federal court suits brought by the state's own citizens. Id.; Lee-Thomas v. Prince George's Cty. Pub. Sch., 666 F.3d 244, 248 (4th Cir. 2012) (quoting Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990)). Thus, the Eleventh Amendment bars actions by any private citizen against a state.

9

See Project Life, Inc. v. Glendening, 139 F.Supp.2d 703, 706–07 (D.Md. May 2, 2001) (quoting Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001)). Additionally, "states' immunity extends to 'state agents and state instrumentalities.'" Lee-Thomas, 666 F.3d at 248 (quoting Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997)).

Here, the University is an instrumentality of the State of Maryland. See Md. Code Ann., Educ. § 14-101(a)(2)–(3) (West 2019) ("The University is an instrumentality of the State [and] an independent unit of State government."). This Court has previously held that the University of Maryland is "an arm of the State for Eleventh Amendment purposes." Palotai v. Univ. of Md. Coll. Park, 959 F.Supp. 714, 716 (D.Md. 1997) (quoting Bickley v. Univ. of Md., 527 F.Supp. 174, 181 (D.Md. 1981)). To make that determination in Bickley, this Court noted that the University of Maryland was established as a corporate body and agency of the State, that the Governor appoints its Board of Regents with the advice and consent of the Senate, and has financial reporting obligations to the State. Bickley, 527 F.Supp. at 182 n.15. The same is true with respect to the University here. See §§ 14-101(a)(1), 14-102(b), 14-104(c). Further, the statutes regarding the University's Board of Regents specify that the University enjoys sovereign and Eleventh Amendment immunity. See § 14-104(q)(4)–(5).

Although states retain immunity from suit, this constitutional bar is not absolute and is subject to three exceptions. Lee-Thomas, 666 F.3d at 248–49 (citing Feeney, 495 U.S. at 304). First, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." Id. at 249 (quoting Garrett, 531 U.S. at 363) (internal quotation marks and

alterations omitted). Second, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." Id. (quoting Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004)).[4] Third, "[a] State remains free to waive its Eleventh Amendment immunity from suit in federal court." Id. (quoting Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 618 (2002)).

The Court will consider the ARRA and NDAA in turn.

### a. ARRA

Out of "due concern for the Eleventh Amendment's role as an essential component of our constitutional structure," Dellmuth v. Muth, 491 U.S. 223, 227–28 (1989), the Supreme Court has prescribed a stringent two-part test for abrogation: (1) "whether Congress has 'unequivocally expresse[d] its intent to abrogate the immunity'"; and (2) "whether Congress has acted 'pursuant to a valid exercise of power.'" Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 55 (1996) (quoting Green v. Mansour, 474 U.S. 64, 68 (1995)). With regard to the first factor, Congress must make "its intention unmistakably clear in the language of the statute." Id. (quoting Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 242 (1985)). Earlier this year, the U.S. District Court for the District of Columbia determined Eleventh Amendment immunity barred claims under the ARRA and the NDAA brought

---

[4] Williams does not bring such a claim. Although she names Dean Wickham as a Defendant, including for Count III, Williams specifies that she is suing him in his personal capacity, not his official capacity. Further, under the ARRA, Williams' claim is against her employer, not her supervisor. See Pub. L. No. 111-5, § 1553(c)(3) ("[T]he complainant may bring a de novo action at law or equity against the employer . . . ."). Williams' employer is the University. As a result, this second exception to Eleventh Amendment immunity does not apply in this case.

by a former employee of the Washington Metropolitan Area Transit Authority ("WMATA") who lost her job after refusing to accept an assignment that she believed would violate the law. See Slack v. Washington Metro. Area Transit Auth., 353 F.Supp.3d 1 (D.D.C. 2019).

Here, the text of the ARRA does not "demonstrate with unmistakable clarity that Congress intended to abrogate the States' immunity from suit." Dellmuth, 491 U.S. at 231. The ARRA does not mention sovereign immunity or provide that the states shall not be immune from suit. See Pub. L. No. 111-5, § 1553. Though the ARRA provides for civil actions, "[a] general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment." Slack, 353 F.Supp.3d at 8 (quoting Dellmuth, 491 U.S. at 231). Thus, Congress did not make its intent unmistakably clear and did not abrogate the University's Eleventh Amendment immunity from suit under the ARRA. The Court will now turn to whether the University waived its Eleventh Amendment immunity with respect to the ARRA.

A state or its instrumentality may waive its Eleventh Amendment immunity, but the Supreme Court has set out a "stringent" test for finding such a waiver. Pense v. Md. Dep't of Pub. Safety & Corr. Servs., 926 F.3d 97, 101 (4th Cir. 2019) (citing Atascadero, 473 U.S. at 241). There must be "a clear declaration that [the State] intends to submit itself to [federal court] jurisdiction." Id. (citing Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675–76 (1999)). The "mere receipt of federal funds cannot establish that a State has consented to suit in federal court." Morres v. Deer's Head Hosp. Ctr., No. CIV. CCB-08-2, 2008 WL 2991178, at *3 (D.Md. July 25, 2008) (quoting

Atascadero, 473 U.S. at 246), aff'd, 324 F.App'x 216 (4th Cir. 2009). Further, courts "indulge in every reasonable presumption against waiver" of fundamental constitutional rights, such as Eleventh Amendment immunity. Slack, 353 F.Supp.3d at 9 (quoting Coll. Sav. Bank, 527 U.S. at 682). Here, although the ARRA's whistleblower protections apply to employees of non-federal employers, that is, a "State or local government receiving funds," § 1553(g)(4), Congress did not expressly condition receipt of ARRA funds on a waiver of sovereign immunity. See Slack, 353 F.Supp.3d at 8–9. Further, Williams makes no allegations like those made in Slack, id. at 9 (concluding that WMATA had waived its immunity from ARRA lawsuits), including that the University affirmatively agreed to comply with the requirements of the ARRA or notified its employees of the right to sue under the ARRA, nor does she seek discovery on that basis. (See 1st Am. Compl.; Williams R. 56(d) Aff.). As a result, the Court concludes that the University did not waive its Eleventh Amendment immunity from ARRA claims.

    **b.**    **NDAA**

Congress also did not abrogate the University's Eleventh Amendment immunity from suit under the NDAA. The text of the NDAA does not mention sovereign immunity or provide that the states shall not be immune from suit. See 41 U.S.C. § 4712 (2018). Though the NDAA provides for judicial review after exhausting agency remedies, see § 4712(c)(2), as discussed above, that does not constitute "unequivocal statutory language sufficient to abrogate the Eleventh Amendment." Dellmuth, 491 U.S. at 231. Nor is there any reason to conclude the University waived its Eleventh Amendment immunity. Congress did not expressly condition receipt of NDAA funds on a waiver of sovereign

immunity. See § 4712; see also Slack, 353 F.Supp.3d at 10–12, and Williams makes no allegations that the University affirmatively agreed to comply with the requirements of the NDAA or notified its employees of the right to sue under the NDAA, nor does she not seek discovery concerning that issue. (See 1st Am. Compl.; Williams R. 56(d) Aff.). As a result, the Court concludes that the University did not waive its Eleventh Amendment immunity from NDAA claims. Accordingly, the Court concludes that the University's Eleventh Amendment immunity bars Count III of the Amended Complaint.

### 2. Wrongful Termination in Violation of Maryland Public Policy

Defendants argue Williams' claim for wrongful termination in violation of Maryland public policy must fail because she filed her Administrative Complaint too late to pursue the exclusive state statutory remedy. Williams acknowledges that she failed to timely file her Administrative Complaint but argues that the statutes under which she brings the federal claim in her First Amended Complaint are independent avenues for relief. In the event the Court dismisses those federal claims, which the Court will based on the University's Eleventh Amendment immunity, Williams requests leave to amend her wrongful termination claim to assert a federal policy or regulation not covered by the state whistleblower statute.

Maryland courts have repeatedly noted that the purpose of the tort of wrongful termination or discharge is "to provide a remedy for an otherwise unremedied violation of public policy." King v. Marriott Inter. Inc., 866 A.2d 895, 904 (Md.Ct.Spec.App. 2005) (citing Wholey v. Sears Roebuck, 803 A.2d 482, 490 (Md. 2002); see also Chappell v. S. Md. Hosp., 578 A.2d 766, 772 (Md. 1990) (declining to apply a tort remedy where the

14

employee had other civil remedies available under both state and federal law); Makovi v. Sherwin–Williams Co., 561 A.2d 179, 190 (Md. 1989) (holding the tort of wrongful discharge was inapplicable where the public policy to be vindicated was expressed in statutes containing their own remedies). "When a statutory cause of action is available to redress the injuries of an employee, wrongful discharge is not an appropriate remedy, and no public policy need be recognized." King, 866 A.2d at 904 (citing Wholey, 803 A.2d at 490). "Only if no statutory remedy exists, might wrongful discharge be an appropriate remedy. Id. (citing Wholey, 803 A.2d at 490).

Here, Williams' state statutory remedy, as she concedes, was SP&P § 5-309, the Maryland Whistleblower Law. The Maryland Whistleblower Law requires that a whistleblower file her complaint "within [six] months after the complainant first knew of or reasonably should have known of the violation." § 5-309(a)(2). Williams was told on May 2, 2017 that she would be terminated effective August 8, 2017. (1st Am. Compl. ¶ 90). She did not file her Complaint until November 27, 2017, more than six months later. As a result, there was a statutory remedy, which Williams failed to pursue in a timely manner, and therefore her wrongful termination tort claim cannot proceed. King, 866 A.2d at 904 (citing Wholey, 803 A.2d at 490).

In light of the Court's conclusion that Williams' claims under the NDAA and ARRA are barred by Eleventh Amendment immunity, the Court now considers Williams' request for leave to amend her wrongful termination count. Williams argues that SP&P § 5-309 only prohibits reprisal against an employee who discloses "a violation of law," as opposed

15

to a violation of "law, rule, or regulation," which is the formulation in § 4712(a)(1) of the NDAA. Defendants contend that permitting Williams to amend her claim would be futile.

Consonant with the federal policy in favor of resolving cases on their merits, Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend a complaint] when justice so requires." Justice does not require permitting leave to amend when amendment would prejudice the opposing party, the moving party has exhibited bad faith, or amendment would be futile. See Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos, 264 F.3d 424, 446 (4th Cir. 2001) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999)). Leave to amend would be futile when an amended complaint could not survive a motion to dismiss for failure to state a claim. See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008).

As Defendants note, the Maryland Whistleblower Law is interpreted in accordance with its federal counterpart, the Whistleblower Protection Act, 5 U.S.C. § 2302 (2018). See Montgomery v. E. Corr. Inst., 835 A.2d 169, 178 (Md. 2003) (noting that the Maryland Whistleblower Law was patterned after the Whistleblower Protection Act, that the language of SP&P § 5-305 is similar to that of § 2302(b)(8), and that in such situations, interpretations of the federal statute are persuasive regarding the state statute). Further, among other similarities between the Whistleblower Protection Act and the two federal statutes at issue in this case, both the NDAA and ARRA use the same inclusive "law, rule, or regulation" language as the Whistleblower Protection Act. See § 2302(b)(8)(i) (NDAA); §1553(a)(5) (ARRA). As a result, granting leave to amend would be futile.

As a result, the Court will grant Defendants' Motion as to Williams' wrongful termination claim.

### 3. Defamation

Defendants argue that Williams has failed to state a claim for defamation against Dean Wickham or, in the alternative, that Dean Wickham is entitled to summary judgment on that claim. Williams counters that she has stated a claim for defamation and that it is not barred by the statute of limitations or qualified privilege. The Court agrees with Defendants.

Williams includes several allegations of defamation against Dean Wickham in Count II of the First Amended Complaint: (1) that he "falsely accused [Williams] to [her] colleagues of securing a grant from the Robert Deutsch Foundation for the express purpose of giving the funds to Marc Steiner and the Center for Emerging Media and thereby using the radio station as a pass-through," (1st Am. Compl. ¶ 117); (2) that he falsely and publicly accused Williams of "favoring and funneling" grant funds to Steiner, (id. ¶ 121); (3) that he falsely and publicly accused Williams of "making expenditures within the radio station that were not actually made – which led to [Williams] ultimately be[ing] terminated," (id. ¶ 119); (4) that he falsely and publicly accused Williams of "failing to manage WEAA's expenses," (id. ¶ 120); and that he "falsely accused [Williams] of favoring a particular political candidate," (id. ¶ 123).

To state a claim for defamation, a plaintiff must plead: (1) a "defamatory communication to a third party"; (2) "that the communication was false"; (3) "that the [d]efendant intended to communicate a false statement"; and (4) "that the [p]laintiff

17

suffered damages." Felder v. MGM Nat'l Harbor, LLC, No. CV PJM 18-3405, 2019 WL 3860272, at *5 (D.Md. Aug. 15, 2019) (quoting Carter v. Morgan, 34 F.App'x 427, 428 (4th Cir. 2002)).

"A plaintiff may not baldly allege a broad course of conduct over a lengthy period of time and later sue on any act that occurred during that time period." English Boiler & Tube Inc. v. W.C. Rouse & Son, Inc., 172 F.3d 862 (table), 1999 WL 89125, at *3 (4th Cir. Feb. 23, 1999). Rather, "[e]very alleged defamatory statement constitutes 'a separate instance of defamation,' which 'a plaintiff must specifically allege.'" Gainsburg v. Steben & Co., 838 F.Supp.2d 339, 344 (D.Md. 2011) (quoting English Boiler, 1999 WL 89125, at *3), aff'd, 519 F.App'x 199 (4th Cir. 2013); see Doe v. Salisbury Univ., 123 F.Supp.3d 748, 758 (D.Md. 2015) ("To satisfy federal pleading standards, a plaintiff must specifically allege each defamatory statement."); Brown v. Ferguson Enters., Inc., Civ. No. CCB–12–1817, 2012 WL 6185310, at *3 (D.Md. Dec. 11, 2012) (finding that a plaintiff's allegations could not plausibly support a claim for defamation where they "contain[ed] no specific description of the content of the alleged statements, nor when and how they were communicated") (emphasis added); Caudle v. Thomason, 942 F.Supp. 635, 638 (D.D.C. 1996) ("In order to plead defamation, a plaintiff should allege specific defamatory comments [including] the time, place, content, speaker, and listener of the alleged defamatory matter." (emphasis added) (internal quotations omitted)).

Under Maryland law, defamation claims are subject to a one-year statute of limitations. See Md. Code Ann., Cts. & Jud. Proc. ["CJP"] § 5–105 ("[A]n action for assault, libel, or slander shall be filed within one year from the date it accrues"). A

defamation claim typically accrues upon the publication of the defamatory material, except when the discovery rule applies. See Schelhaus v. Sears Holding Corp., No. 1:09-CV-1145, 2009 WL 4728989, at *2 (D.Md. Dec. 3, 2009). That rule provides that the claim accrues when "a plaintiff in fact knows, or reasonably should know, of the wrong." Id. (citing Hecht, et al. v. Resolution Tr. Corp., 635 A.2d 394, 399 (Md. 1994)).

Here, Williams has not pleaded the dates of any of her defamation allegations, leaving the Defendants and the Court to guess when each of these instances of defamation occurred. In addition to frustrating notice to Defendants, this omission also frustrates any analysis of the one-year statute of limitations—an analysis especially relevant here, where the Complaint was filed almost a year after Williams was notified of her termination. With respect to the first allegation, for example, Defendants guessed that Williams was referring to a March 2017 email exchange between her and Dean Wickham to which several other people, including Dr. Gibson, were carbon-copied. (See Wickham Aff. Ex. G ["Deutsch Grant Emails"] at 178–82, ECF No. 5-4).[5] Defendants then argued that this alleged defamation was barred by the one-year statute of limitations. (Defs.' Mot. at 13). In her Opposition, Williams responded by specifying, for the first time, that "Dean Wickham made the defamatory statements at a large meeting in May 2017," (Pl.'s Mem. P. & A. Supp. Pl.'s Opp'n Defs.' Mot. Dismiss Altern. Summ. J. ["Pl.'s Opp'n"] at 22, ECF No. 11-1), citing to an undated Williams Affidavit, in which Williams offered more details about the May 2017 meeting, (id. Ex. 1). A plaintiff, however, is "bound by the allegations

---

[5] Citations to the Wickham Affidavit and its exhibits are to the CM/ECF pagination.

contained in [her] complaint and cannot, through the use of motion briefs, amend the complaint." Zachair, Ltd. v. Driggs, 965 F.Supp. 741, 748 n.4 (D.Md. 1997), aff'd, 141 F.3d 1162 (4th Cir. 1998); Hurst v. District of Columbia, 681 F.App'x 186, 194 (4th Cir. 2017) ("[A] plaintiff may not amend her complaint via briefing."). As a result, the Court must measure the sufficiency of the facts alleged in the operative pleading, the First Amended Complaint. The First Amended Complaint does not meet the pleading standard for defamation set out by the Court of Appeals of Maryland or the federal courts in this Circuit. See English Boiler, 1999 WL 89125, at *3; Gainsburg, 838 F.Supp.2d at 344; Brown, 2012 WL 6185310, at *3. Accordingly, the Court will grant Defendants' Motion as to Williams' defamation claim.

## III. CONCLUSION

For the foregoing reasons, the Court will grant the Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 5), construed as a motion to dismiss. A separate Order follows.

Entered this 30th day of September, 2019.

                                             /s/
                                    George L. Russell, III
                                    United States District Judge