IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHELE WILLIAMS,

    Plaintiff,

v.

                                     Civil Action No.: GLR-19-5

MORGAN STATE UNIVERSITY, et al.,

    Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Morgan State University ("Morgan State") and DeWayne Wickham's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 5), on remand pursuant to the judgment of the United States Court of Appeals for the Fourth Circuit (ECF Nos. 30, 31). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons set forth below, the Court will grant the Motion.

## I.    BACKGROUND

Plaintiff Michele Williams alleges that Defendants retaliated against her in violation of the National Defense Authorization Act, 41 U.S.C. § 4712 et seq. ("NDAA"), and the American Recovery and Reinvestment Act, Pub. L. No. 111-5, § 1553, 123 Stat. 115 ("ARRA"). (First Am. Compl. ¶¶ 130–38, ECF No. 1-12).[1] The facts underlying Williams'

_____

[1] The First Amended Complaint contained several other counts, including wrongful termination in violation of Maryland public policy, defamation, and violation of 42 U.S.C. § 1981. (See First Am. Compl. ¶¶ 103–29, 139–52). Williams withdrew her § 1983 claim before the Court issued its initial ruling in this matter. (Mem. P. & A. Supp. Pl.'s Opp'n Defs.' Mot. Dismiss Alt. Summ. J. at 25, ECF No. 11-1). She then abandoned her wrongful

Complaint are set forth in detail in the Court's September 30, 2019 Memorandum Opinion granting Morgan State's Motion. (See Sept. 30, 2019 Mem. Op. ["Mem. Op."] at 1–4, ECF No. 19).

On or about November 27, 2017, Williams filed a complaint under the Maryland Whistleblower Law, Md. Code Ann., State Pers. and Pens. § 5-309, with the State of Maryland's Office of Secretary of State. (Defs.' Mot. Dismiss Alt. Summ. J. ["Defs.' Mot."] at 3; see Administrative Compl. at 10, ECF No. 5-2). On April 26, 2018, Williams filed a Complaint in the Circuit Court for Baltimore City, Maryland. (Not. Removal ¶ 1, ECF No. 1; Compl., ECF No. 1-4). On November 30, 2018, Williams filed a First Amended Complaint. (Not. Filing First Am. Compl. at 2, ECF No. 1-13). On January 2, 2019, Defendants removed the case to this Court. (ECF No. 1).

On January 9, 2019, Defendants filed their Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 5). On February 15, 2019, Williams filed her Opposition. (ECF No. 11). On March 20, 2019, Defendants filed a Reply. (ECF No. 16). The Court issued an Order and Memorandum Opinion on September 30, 2019, granting the Motion, based in part on Eleventh Amendment immunity grounds. (ECF Nos. 18, 19). On October 14, 2019, Williams filed a timely Motion for Reconsideration.[2] (ECF No. 20). On October 28, 2019, the Defendants filed an Opposition. (ECF No. 21). Williams filed a

---

termination and defamation claims on appeal. (Mar. 18, 2021 Op. at 3 n.1, ECF No. 30-1). Accordingly, only her NDAA and ARRA claims survive.

[2] Williams filed a Notice of Appeal on October 30, 2019. (ECF No. 22).

Reply on November 12, 2019. (ECF No. 25). The Court denied Williams' Motion for

Reconsideration on December 23, 2019. (ECF No. 26).

On appeal, the Fourth Circuit vacated the Court's decision upon finding that the

Court "legally erred when it dismissed Williams' retaliation claims solely based on

Eleventh Amendment immunity." (Mar. 18, 2021 Op. ["4th Cir Op."] at 4, ECF No. 30-1).

The Fourth Circuit found, however, that the Court had not considered whether Williams'

claims were barred by state sovereign immunity. (Id. at 4–5). The Fourth Circuit thus

remanded the case for the Court to determine whether, through enactment of the Maryland

Tort Claims Act, Md. Code Ann., State Gov't § 12-101 et seq., Maryland waived its

sovereign immunity for the purposes of Williams' NDAA and ARRA claims. (4th Cir Op.

at 5).

On April 13, 2021, the Court ordered supplemental briefing on that issue. (ECF No.

33). Defendants filed a Supplemental Memorandum in support of their Motion to Dismiss

or, in the Alternative, for Summary Judgment on May 12, 2021. (ECF No. 34). Williams

filed a Supplemental Opposition on June 9, 2021. (ECF No. 37). Defendants filed a

Supplemental Reply on June 24, 2021. (ECF No. 40).

## II.    DISCUSSION

### A.    Standard of Review

The purpose of a Rule 12(b)(6) motion[3] is to "test[ ] the sufficiency of a complaint,"

not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of

---

[3] As set forth in the Court's September 30, 2019 Memorandum Opinion, the Court declined to convert Morgan State's Motion to a motion for summary judgment because

defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City

of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it

does not contain "a short and plain statement of the claim showing that the pleader is

entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible

on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is

not required to forecast evidence to prove the elements of the claim, the complaint must

allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d

445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)),

aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a

whole, consider the factual allegations in the complaint as true, and construe the factual

allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268

(1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005)

(citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept

unsupported or conclusory factual allegations devoid of any reference to actual events,

---

Williams filed an affidavit seeking discovery pursuant to Federal Rule of Civil Procedure
56(d). (See Mem. Op. at 5–7).

United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal

conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B.      Analysis**

State sovereign immunity "is a broad[ ] doctrine that 'bars all claims by private

citizens against state governments and their agencies, except where Congress has validly

abrogated that immunity or the state has waived it.'" Williams v. Morgan State Univ., 850

F.App'x 172, 174 (4th Cir. 2021) (quoting Passaro v. Virginia, 935 F.3d 243, 247 (4th Cir.

2019)).[4] "[T]he States' immunity from suit is a fundamental aspect of the sovereignty

which the States enjoyed before the ratification of the Constitution, and which they retain

today." Id. (quoting Alden v. Maine, 527 U.S. 706, 713 (1999)). "Unlike Eleventh

Amendment immunity, a state does not waive its sovereign immunity by removing a suit

to federal court." Id. (citing Passaro, 935 F.3d at 247).

Courts in Maryland apply a two-part test to determine whether sovereign immunity

applies in a specific case: "(1) whether the entity asserting immunity qualifies for its

protection; and, if so, (2) whether the legislature has waived immunity, either directly or

by necessary implication, in a manner that would render the defense of immunity

unavailable." Stern v. Bd. of Regents, Univ. Sys. of Md., 846 A.2d 996, 1001 (Md. 2004)

(quoting ARA Health Servs. Inc. v. Dep't of Pub. Safety & Corr. Servs., 685 A.2d 435,

---

[4] As Williams conceded on appeal, neither the NDAA nor the ARRA contain language "unequivocally express[ing Congress's] intent to abrogate [State] immunity." Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 55 (1996) (citation omitted). Williams does not argue the point in her supplemental briefing on the instant Motion. Accordingly, the Court focuses its analysis on whether Maryland voluntarily waived its sovereign immunity as to claims arising under those statutes.

438 (Md. 1996)). There is no question that Morgan State is an entity generally protected by sovereign immunity. See Md. Code Ann., Educ. § 14-101(a) (providing that Morgan State is "an instrumentality of the State" and "an independent unit of State government").

Thus, the Court must decide whether the Maryland legislature has waived immunity by enacting the Maryland Tort Claims Act, Md. Code Ann., State Gov't ("S.G.") § 12-101 et seq. ("MTCA"). "[T]he question of waiver of sovereign immunity by a state constitutional provision or statute is a matter of state law, 'as to which the decision of the [state's highest court] is controlling.'" Lee-Thomas v. Prince George's Cnty. Pub. Sch., 666 F.3d 244, 249 (4th Cir. 2012) (quoting Palmer v. Ohio, 248 U.S. 32, 34 (1918)). The Court of Appeals of Maryland has held that no suit can be maintained against the State "unless the General Assembly has specifically waived the doctrine" of sovereign immunity. Stern, 846 A.2d at 1001. Maryland courts "have strictly construed such waivers in favor of the sovereign." Bd. of Educ. of Balt. Cnty. v. Zimmer-Rubert, 973 A.2d 233, 240 (Md. 2009) (citations omitted). Thus, courts read statutory waiver language "narrowly in order to avoid weakening the doctrine of sovereign immunity by judicial fiat." Stern, 846 A.2d at 1012–13.

The MTCA states that subject to certain exceptions not at issue here, "the immunity of the State and of its units is waived as to a tort action, in a court of the State[.]" S.G. § 12-104(a)(1).[5] "Tort action" is not defined in the MTCA's definitions section. See S.G. § 12-

---

[5] This Court has repeatedly held that "[a]ny sovereign immunity that defendants may claim in Maryland state court travel[ ] with them to federal court." Robinson v. Pytlewski, No. PX-19-1025, 2020 WL 607030, at *9 n.4 (D.Md. Feb. 7, 2020) (internal quotation marks and citations omitted); see also Stewart v. North Carolina, 393 F.3d 484,

101. Thus, the Court is left to decide whether Williams' claims under the NDAA and

ARRA are "tort actions" within the meaning of the MTCA. The Court of Appeals of

Maryland has instructed courts faced with such an issue of statutory construction to

"begin[] with the plain language of the statute, and ordinary, popular understanding of the

English language dictates interpretation of its terminology," adding that "[i]f statutory

language is unambiguous when construed according to its ordinary and everyday meaning,

then we give effect to the statute as it is written." Zimmer-Rubert, 973 A.2d at 241

(citations omitted). Courts should "avoid a construction of the statute that is unreasonable,

illogical, or inconsistent with common sense." Id. at 242 (citation omitted).

This Court recently confronted a nearly identical question in Bozarth v. Maryland

State Department of Education, No. DLB-19-3615, 2021 WL 1225448 (D.Md. Mar. 31,

2021). In that case, Defendants asserted that they were protected by sovereign immunity

as to plaintiff's employment discrimination claims arising under the Family and Medical

Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA"). Id. at *5–11. The

Court found that:

> A plain reading of § 12-104 suggests that the State has not
> waived its common law sovereign immunity with respect to
> claims arising under Title I of the ADA or the self-care
> provision of the FMLA. . . . The terms of § 12-104(a)(1) are
> clearly limited to tort actions. Additionally, § 12-104 is
> entitled, "Waiver of State tort immunity." Neither of Ms.
> Bozarth's causes of actions based on Title I of the ADA or the

---

490 (4th Cir. 2005) (finding that a state "did not waive sovereign immunity by voluntarily
removing the action to federal court for resolution of the immunity question"). Thus, to the
extent Defendants did not otherwise waive their sovereign immunity as to Williams'
claims, they have not waived it by removing the action to this Court.

> self-care provision of the FMLA relate to torts. The claims the
> State challenges here relate only to federal employment law.

Bozarth, 2021 WL 1225448, at *7.

This Court has confronted this issue on several other occasions and each time has similarly found that Maryland's waiver of sovereign immunity as to tort claims did not extend to claims arising under federal statutes. See Sutton v. Dep't of Hum. Servs., No. RDB-19-0542, 2019 WL 4447379, at *3 (D.Md. Sept. 17, 2019) ("The MTCA waives immunity to tort actions brought in state court; it does not waive immunity as to all causes of actions or to claims brought under federal law."); Johnson v. Md. Transit Admin., No. CCB-18-3768, 2019 WL 3290982, at *2 (D.Md. July 19, 2019) (finding that claims under the Fair Labor Standards Act were statutory claims and therefore did not fall under a waiver of sovereign immunity that extended "only to contracts and torts claims"), aff'd, 821 F.App'x 258 (4th Cir. 2020) (per curiam); Carter v. Maryland, No. JKB-12-1789, 2012 WL 6021370, at *6 (D.Md. Dec. 3, 2012) ("The State Defendants have provided no authority for the proposition that a violation of a federal statute—in this case, the ADA— constitutes a tort under Maryland law."). Defendants thus urge the Court to adopt the reasoning in Bozarth and these other decisions and find that Maryland has not waived sovereign immunity as to Williams' claims under the NDAA and ARRA.

Williams has identified no case in which this Court or any other court has found that the MTCA waived sovereign immunity as to claims arising under a federal statute. Williams argues, however, that the Bozarth decision was in error, and points to two decisions by this Court in which it found that the MTCA's notice requirement extended to

8

statutory claims arising under the Maryland Fair Employment Practices Act ("MFEPA").

See Royster v. Gahler, 154 F.Supp.3d 206, 220 (D.Md. 2015); Bales v. Md. Judiciary/

Admin. Off. of the Cts., No. JFM-15-3293, 2016 WL 6879902, at *12 (D.Md. Nov. 22,

2016).[6] Williams argues that the Court should extend the reasoning of these cases and find

that the MTCA waives the State's sovereign immunity as to federal statutory claims.

The Court is unpersuaded by these two decisions. First, both decisions relate to

plaintiffs' compliance with the MTCA notice requirements in a case arising under a

Maryland statute containing its own waiver of sovereign immunity. See S.G. § 20-903. The

cases are thus distinguishable from this action, which does not turn on compliance with

MTCA notice requirements and which involves federal statutes that do not abrogate state

sovereign immunity.

Further, Royster relies heavily on Hansen v. City of Laurel, 25 A.3d 122 (Md. 2011),

in which the court found that an employee of a local government was subject to the pre-

suit notice requirements set forth in the Local Government Tort Claims Act, Md. Code

Ann., Cts. & Jud. Proc. ["C.J.P."] § 5-301 ("LGTCA"). See Royster, 154 F.Supp.3d at 220

("Based on Hansen, I am satisfied that the notice requirement of the MTCA is applicable

to an employment discrimination claim against the State."). The LGTCA contains a similar

waiver of sovereign immunity to that contained in the MTCA. Compare C.J.P. § 5-

---

[6] The Court notes that the Bales decision does not contain its own significant analysis of the issue, instead largely confining its discussion to a recitation of the holding in Royster and concluding that it found Royster persuasive. See Bales, 2016 WL 6879902, at *12. Thus, the Court will focus its review of the applicability and persuasiveness of the decisions on the analysis contained in Royster.

303(b)(1) ("[A] local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee[.]"), with S.G. § 12-104(a)(1) ("[T]he immunity of the State and of its units is waived as to a tort action, in a court of the State[.]"). However, the Hansen decision contains virtually no analysis of the sovereign immunity waiver contained in the LGTCA, let alone the MTCA. See Bozarth, 2021 WL 1225448, at *8 (noting that the Hansen Court "summarily concluded the notice requirement applied to the plaintiff's employment action because the notice provision, by its plain terms, applied to any action for unliquidated damages against a local government—not merely those sounding in tort" (citing Hansen, 25 A.3d at 130 n.7)); Hansen, 25 A.3d at 137 n.15 ("Whether the City retained its immunity to such employment discrimination claims is open as well."). Because Hansen is inapposite, so is Royster.[7]

Williams also points to several decisions by the Court of Appeals of Maryland finding that the MTCA or the LGTCA permit claims against the State in cases that fall outside of what this Court views as an ordinary definition of a "tort action." See, e.g., Espina v. Jackson, 112 A.3d 442, 454 (Md. 2015) (finding that the waiver of sovereign immunity as to "tortious acts or omissions" in the LGTCA extends to state constitutional claims); Green v. N.B.S., Inc., 976 A.2d 279, 288 (Md. 2009) (finding that a Maryland statute limiting noneconomic damages for "victims of tortious conduct" extended to a

---

[7] The persuasive power of Royster is also somewhat diminished because the decision was later abrogated by the Fourth Circuit, albeit on partially unrelated grounds. See Pense v. Md. Dep't of Pub. Safety & Corr. Servs., 926 F.3d 97, 102 (4th Cir. 2019).

10

tenant's statutory claims brought under the Maryland Consumer Protection Act); Lee v. Cline, 863 A.2d 297, 304 (Md. 2004) ("The current language of the [MTCA] plainly appears to cover intentional torts and constitutional torts as long as they were committed within the scope of state employment and without malice or gross negligence."); see also Litz v. Md. Dep't of Env't, 131 A.3d 923, 935 (Md. 2016) (finding that inverse condemnation claims should be treated "differently from common law or statutory torts" (emphasis added)).

The Court of Appeals decisions cited by Williams are distinguishable from the case at bar. In the case of Espina and Green, both decisions involve statutes other than the MTCA that refer not to "tort actions," but to "tortious acts" or "tortious conduct." In the Court's view—mindful of the admonition that it should read statutory waiver language "narrowly in order to avoid weakening the doctrine of sovereign immunity by judicial fiat," Stern, 846 A.2d at 1012–13—these phrases, which describe categories of conduct by defendants, are distinguishable from a "tort action," which refers to a type of legal claim. The Court declines to extend the reasoning in those cases to the distinct language contained in the MTCA.

With respect to Lee, the Court finds that "constitutional torts" are distinguishable from claims arising under statute. As the Maryland Court of Appeals has explained, "we have previously referred to constitutional violations as 'constitutional torts.'" Espina, 112 A.3d at 451. The phrase "statutory torts" does not share this history; indeed, it appears to have found its way into a total of six Maryland appellate court decisions in the history of

11

the state.[8] Given this history, and once again mindful of the limitations imposed by <u>Stern</u>, the Court declines to extend the reasoning in <u>Lee</u> regarding state constitutional claims to claims arising under federal statutes.

As set forth above, neither the Fourth Circuit nor the Maryland Court of Appeals has provided clear guidance on the issue at bar.[9] Although the Court finds some of the case law on the periphery of this question vexing, it is compelled by the edict of <u>Zimmer-Rubert</u> to find that, until and unless the Court of Appeals or the Fourth Circuit issues an express contradictory holding, the phrase "tort action" has an ordinary meaning and it does not include federal statutory causes of action. <u>See</u> 973 A.2d at 241 (advising courts that "[i]f statutory language is unambiguous when construed according to its ordinary and everyday meaning, then we give effect to the statute as it is written"); <u>see also</u> R.F.V. Heuston, <u>Salmond on the Law of Torts</u> 13 (17th ed. 1977) ("We may . . . define a tort as a civil wrong for which the remedy is a <u>common-law action</u> for unliquidated damages, and which is not exclusively the breach of a contract or the breach of a trust or other merely equitable obligation." (emphasis added)). Thus, the Court finds that Maryland has not

---

[8] In comparison, a Westlaw search indicates that the phrase "constitutional tort" has appeared in ninety-one Maryland appellate court decisions.

[9] The Court notes, however, that the Fourth Circuit has impliedly offered some support for its decision through its affirmance in <u>Johnson v. Maryland Transit Administration</u>, 821 F.App'x 258 (4th Cir. 2020) (per curiam). Via its unpublished per curiam opinion, the Fourth Circuit affirmed a decision by this Court holding that claims under the Fair Labor Standards Act were statutory claims and therefore did not fall under a waiver of sovereign immunity that extended "only to contracts and torts claims." <u>See</u> <u>Johnson</u>, 2019 WL 3290982, at *2.

waived its sovereign immunity to Williams' claims under the NDAA and ARRA. Accordingly, the Court will once again grant Defendants' Motion.[10]

### III.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 5), on remand pursuant to the judgment of the United States Court of Appeals for the Fourth Circuit (ECF Nos. 30, 31). A separate Order follows.

Entered this 26th day of July, 2021.

/s/
_____
George L. Russell, III
United States District Judge

---

[10] Because the Court finds that Williams' surviving claims are foreclosed by sovereign immunity, it need not reach the question of whether her claims would survive on the merits.